# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHARITA M. TAYLOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-07-330-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Sharita M. Taylor requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether the decision is supported by substantial evidence; and second, whether the correct legal standards were applied. *Hawkins v. Chater*, 114 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias* 933 F.2d at 800-801.

---

[1] Step one requires the claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to a listed impairment), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show she does not retain the residual functional capacity (RFC) to perform her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work she can perform existing in significant numbers in the national economy, taking into account the claimant's age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

## Claimant's Background

The claimant was born on October 1, 1977, and was 29 years old at the time of the administrative hearing. She has an eleventh grade education and previously worked as a housekeeper, cashier II, fast food worker, car hop, and nursery school attendant. She alleges disability since May 1, 2001, because of chronic back pain, neck and knee injuries, and a learning disability.

## Procedural History

On April 25, 2005, the claimant protectively filed her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and an application for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385. Both applications were denied. ALJ Kim Parrish conducted a hearing and found the claimant was not disabled on May 22, 2007. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He determined that the claimant had the residual functional capacity ("RFC") to perform light work, *i. e.*, that she could lift a maximum of twenty pounds with frequent lifting and/or carrying of ten pounds, stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. The claimant was further limited to only occasional bending forward at the waist, bending at the knees to come to rest on the knees, and bending

downward by bending the legs and spine (Tr. 17). The ALJ concluded that the claimant was capable of returning to her past relevant work as a fast food worker, car hop, cashier II, and nursery school attendant. He also determined that the claimant could perform the jobs of personal attendant and companion, both of which existed in significant numbers in the regional and national economies (Tr. 21-22).

**Review**

The claimant contends that the ALJ erred: (i) by improperly developing the record at step four; and, (ii) by improperly evaluating the medical evidence. With regard to the second contention, the claimant argues that the ALJ failed to fully consider the opinions rendered by examining physician Dr. Michael Carnahan, M.D. The Court finds this contention dispositive.

The record reveals that the claimant was seen by Dr. Carnahan on three occasions between May and June 2001. At a May 9, 2001 visit, the claimant reported that when loading sheets at her housekeeping job, she experienced an onset of pain in her upper back and neck. She complained of pain in the lower thoracic region into the cervical area with radiation into both shoulders. When examined by Dr. Carnahan, the claimant exhibited myofacial tightness. He assessed the claimant with myofacial upper back and neck strain, recommended ice and stretching, physical therapy, prescribed Soma and Vioxx, and restricted the claimant from performing overhead work and heavy lifting (Tr. 146-47). When the claimant returned on May 17, 2001, she reportedly felt worse. Her back pain was severe and she was now experiencing back spasms and sharp stabbing pain in her upper back and

neck. She exhibited tenderness in the left upper trapezial and cervical areas, but she had no radicular symptoms and had a full range of motion. Dr. Carnahan again assessed the claimant with myofacial upper back and neck pain. He continued to recommend physical therapy and suggested an MRI of the claimant's back. He prescribed a TENS unit and Lortab for pain and limited the claimant to no lifting, twisting, bending, or overhead work (Tr. 144-45). At the claimant's last visit on June 11, 2001, the claimant indicated she had not tolerated physical therapy well and had not gone for her MRI, but she continued to use the TENS unit. Examination revealed tenderness all around the upper back and neck area. Her range of motion was subjectively limited, although Dr. Carnahan noted her symptoms seemed "disproportionate . . . to the mechanism of injury." He "[was] not sure what her secondary motivation could be." He assessed the claimant with myofacial upper back and neck strain and did not think she could lift, twist, bend or lift overhead based on her complaints (Tr. 142-43).

The ALJ discussed some of the limitations imposed on the claimant by Dr. Carnahan, *e. g.*, Dr. Carnahan's limitations on the claimant for no overhead work or heavy lifting from May 9, 2001 (Tr. 19). However, he failed to mention Dr. Carnahan's restrictions on the claimant from May 17, 2001, and June 11, 2001, *i. e.*, in addition to the continuing restriction on overhead work, Dr. Carnahan limited the claimant to *no* lifting, twisting, or bending. These omissions by the ALJ were significant because the ALJ did not include any limitations on the claimant's ability to perform overhead work or twisting in the RFC determination; he only included limitations on the claimant's lifting and bending. It was error for the ALJ to

"pick and choose" between Dr. Carnahan's findings without any explanation. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted]. Instead, the ALJ should have discussed the evidence supporting his decision and explained his rejection of the evidence that did not. *See*, *e. g.*, *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). *See also Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) (remanding "for the ALJ to articulate specific findings and his reasons for ignoring . . . evidence.").

Because the ALJ failed to discuss probative evidence inconsistent with his RFC determination, the undersigned Magistrate Judge cannot determine the extent to which it was actually considered. *See, e. g., Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan,* 933 F.2d 598, 603 (7th Cir. 1991). *See also Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision

itself.") [citations omitted]. Accordingly, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further consideration of Dr. Carnahan's opinions. If on remand there is any adjustment to the claimant's RFC, the ALJ should redetermine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

As set forth above, the Court finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 16th day of December, 2008.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**